FILED
2014 Mar-11  AM 11:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **DON HUNTER, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Action No.:** |
| **MIDLAND FUNDING, LLC, a** ) | |
| **corporation; MIDLAND CREDIT** ) | |
| **MANAGEMENT, INC., a** ) | |
| **corporation;** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's

Complaint against the Defendants states as follows:

1.    This action arises out of Defendants' repeated violations of the Fair Debt

Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]),

out of state law violations and out of the invasion of Plaintiff's personal and

financial privacy by the Defendants and their agents in their illegal efforts to

collect a consumer debt from Plaintiff.

2.    The Plaintiff was sued for a debt Plaintiff did not owe.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts
thereto.

3.  Defendant Midland Funding, LLC never had any intention of offering any proof at trial.

4.  Instead, the lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt Plaintiff did not owe.

5.  This is the pattern of collection activity by Defendant Midland Funding, LLC in its collection lawsuits in Alabama.

6.  The Plaintiff won the lawsuit.

## JURISDICTION

7.  Personal jurisdiction exists over Defendants as they have the necessary minimum contacts with the State of Alabama and this suit arises out of their specific conduct with Plaintiff in Alabama.  All the actions described in this suit occurred in Alabama.

8.  Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

9.  Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendants do business in this judicial district.

## PARTIES

10. Plaintiff Don Hunter (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

11. Defendant Midland Funding, LLC, ("Defendant" or "Midland[2]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama. It is a "debt collector" under the FDCPA. It is incorporated in Delaware and has its principal place of business in Nevada.

12. Defendant Midland Credit Management, Inc., ("Defendant" or "Midland") is a foreign debt collection firm that engages in the business of debt collection in Alabama. It is a "debt collector" under the FDCPA. It is incorporated in and has its principal place of business in California.

13. In this case, Defendants Midland Funding, LLC and Midland Credit Management, Inc. acted as agents for each other and all actions taken by one entity were taken on behalf of the other entity.

14. Defendant Midland Funding, LLC and Defendant Midland Credit Management, Inc. are hereinafter referred to collectively as "Midland."

---

[2] "Midland Funding, LLC" or "Midland Credit Management, Inc." means Midland directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

15.    Defendant Midland Funding, LLC, upon information and belief, allegedly buys defaulted consumer debt.

16.    Defendant Midland Funding, LLC, assigns all collection activities for the defaulted debt to Midland Credit Management, Inc.  This includes credit reporting.

17.    These companies are operated from the same location, with the same ownership, and are otherwise treated as one company.

## BACKGROUND INFORMATION ON DEBT BUYER LAWSUITS  BY MIDLAND IN ALABAMA

18.    This case represents a growing trend in the debt collection and credit reporting industries.

19.    First, a debt buyer such as Midland which claims to buy the Plaintiff's debt for pennies on the dollar will sue the Plaintiff in small claims or district court.

20.    While the debt buyer will claim that it has accurate records, this is not true.

21.    The purchase agreement between the original creditor and the first debt buyer will state that there is no promise or representation as to the accuracy of the information sold to the first debt buyer.

22.    That first debt buyer cannot represent any greater quality to any subsequent debt buyer.

23.    In any event, one of the debt buyers, in this case Midland, will sue the Alabama consumer.

24. Midland will hire a collection law firm to file the suit.

25. Generally, most consumers default as they assume if a lawsuit has been filed, it must be legitimate.

26. Occasionally, however, the consumer will file an answer and deny owing money.

27. The reason is that Midland knows that in virtually every case it will be unable (or unwilling) to prove that the consumer owes this debt to Midland.

28. The debt buyer Midland has no intention of proving its case.

29. No witness will be provided by Midland.

30. No admissible evidence will be presented in court.

31. The entire model is based upon filing a high volume of cases, obtaining default judgments, and never having to make any effort to prove the allegations of the lawsuit.

32. When resistance is provided, such as an attorney defending a consumer, Midland knows the case will be lost as it has no evidence, no witness, and no intention of proving the case.

33. This is a reality that Midland prefers to keep secret from consumers in Alabama.

34. The case gets set for trial.

35.   The judge rules in favor of the consumer at the trial as Midland offered no evidence.

36.   Or, as here, Midland knows it has been caught at trial and agrees to dismiss the case with prejudice.

37.   Midland has 14 days to appeal from an adverse judgment in Alabama Small Claims or Alabama District Court.

38.   Midland does not appeal.

39.   Midland knows that losing its case means under Alabama law that the debt is not owed by the consumer to the debt buyer.

40.   Since the debt is not owed, collection efforts must cease.

41.   Since the debt is not owed, false credit reporting has occurred by Midland.

42.   The factual allegations above relate directly to Defendant Midland concerning the filing of the lawsuit by Defendant Midland, its lack of any intent or ability to prove its case against Plaintiff who does not owe Defendant Midland any money on this account, and Defendant Midland's collection activities against Plaintiff.

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

43.   Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

44.   Congress recognized that there are four social ills caused by abusive debt collection:   (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

45.   Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

46.   15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)   There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

(b)   Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)   **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

(d)   Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)   It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## The Small Claims Complaint

47.  On March 27, 2013, Defendant Midland sued Plaintiff in the Small Claims Court of Etowah County, Alabama, with a case number of SM-2013-900357.

48.  This suit was filed by the Zarzaur & Schwartz collection law firm.

49.  In this suit, Defendant Midland asserted it was the owner of a certain debt allegedly owed by Plaintiff.

50.  Defendant Midland alleged Plaintiff owed Midland $2,903.41.

51.  Defendant Midland also claimed court costs.

52.  Defendant Midland knows that Plaintiff has never done business with Defendant Midland.

53.  No mention was made in the lawsuit that whoever sold the alleged debt to Midland disclaimed the accuracy of the records.

54.  The statute of limitations had run before Midland sued Plaintiff.

55.  Despite the fact that Midland knew or should have known that the statute had run it filed suit on this stale debt against Plaintiff.

56.  Given this lawsuit, Defendant Midland would be expected to have an intention of proving its case.

57.  No such intention existed.

58.  Defendant Midland never intended to offer one shred of evidence to prove its case.

59.  This lawsuit, and the hundreds of other Alabama lawsuits filed by Midland every year, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Midland cannot and will not prove it has any right to collect on.

60.  Another intention of Defendant Midland was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

61.  Defendant Midland knew Plaintiff did not owe the debt sued on.

62.  Defendant Midland made numerous misrepresentations and false statements in the lawsuit.

63.  Defendant Midland misrepresented that a debt was owed – none was owed by Plaintiff to Defendant Midland.

64.  Defendant Midland misrepresented the amount owed when Plaintiff owed Defendant Midland nothing on this account.

65.  Defendant Midland misrepresented that Defendant Midland had standing and the right to bring the lawsuit when Defendant Midland did not have standing and did not have the right to bring the lawsuit.

66. Defendant Midland did not own the debt at the time the lawsuit was filed.

67. Defendant Midland did not own the debt at any time the lawsuit was pending.

68. Defendant Midland misrepresented that they intended to prove their case when Defendant Midland had no intent to prove their case.

69. Defendant Midland misrepresented that they intended to offer any evidence in the case when Defendant Midland had no intention of offering any evidence in the case.

70. This suit was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant Midland in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers.

## Plaintiff Answers The Midland Lawsuit

71. Plaintiff did not and does not owe the debt to Midland.

72. Plaintiff filed an Answer denying the allegations of Defendant Midland.

73. The Answer was filed on April 25, 2013 by Plaintiff Hunter.

74. Defendant Midland received a copy of this denial.

75. Defendant Midland understood that Plaintiff was refusing to pay on this debt.

76. Defendant Midland understood that Plaintiff disputed this debt.

77.   Defendant Midland knew Plaintiff did not owe this debt.

78.   Defendant Midland knew Plaintiff raised the issue of statute of limitation but pursued the case even though it knew the lawsuit was time barred.

79.   Defendant Midland made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Midland knew that there was no merit to the case, but Defendant Midland sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Midland.

## The Judge Sets The Midland Lawsuit For Trial

80.   At all times Plaintiff was prepared for trial.

81.   At all times Defendant Midland was unprepared for trial.

82.   Defendant Midland knew that with its intention to never prove the case, and with a represented Plaintiff, the game was over.

83.   Defendant Midland had provided no proof to its collection counsel that Defendant Midland owned the debt.

84.   Defendant Midland had provided no proof to its collection counsel that Plaintiff owed Defendant Midland the debt.

85.   Defendant Midland provided no evidence and no witness to its collection counsel at any time prior to the trial and up through the end of the trial.

## Midland Files Motion to Dismiss

86. At the trial, Midland filed a Joint Stipulation of Dismissal with prejudice.

87. Defendant Midland offered no proof and never attempted to offer any proof that it was entitled to a verdict against Plaintiff.

88. As Defendant Midland supplied its collection counsel with no proof and no witnesses, Defendant Midland (through collection counsel) had no proof or evidence to even attempt to offer into evidence in the trial of this case.

89. Defendant Midland offered no testimony from any witness in this case.

90. Defendant Midland did not question Plaintiff at trial in this case.

91. Defendant Midland did not have at trial any employee or agent of Defendant Midland to present evidence or testimony.

92. Defendant Midland did not question any employee or agent of Defendant Midland at trial in this case.

93. Defendant Midland did not have any witness of any type to present evidence or testimony.

94. Defendant Midland did not question any witness at trial in this case.

95. Defendant Midland did not even attempt to submit any document into evidence at trial in this case.

96. No evidence of any type was submitted by Defendant Midland in the trial of this case.

97. Instead, when Midland realized it was caught without any proof, it told Plaintiff Hunter, pro se, to sign the Joint Stipulation of Dismissal to end the case.

98. Judge Clay dismissed the case with prejudice.

99. This ended the case Defendant Midland filed against Plaintiff.

### Defendant Midland Falsely Credit Reports on Plaintiff's Credit

100. Credit reporting by Defendant Midland occurred before, during, and after the collection lawsuit.

101. Defendant Midland knew, or should have known, that its credit reporting was false, violating 15 USC § 1692e(8) and state law.

102. Defendant Midland knew that Plaintiff did not owe Defendant Midland any money on this debt.

103. Defendant Midland knew that Defendant Midland did not own the debt being credit reported.

104. Defendant Midland reported a stale debt beyond that time which it is legally entitled to report.

105. Midland knew or should have known this debt was too old to legally credit report.

106. The reason for the false credit reporting was to force the Plaintiff into paying a debt not owed.

## Remaining Factual Allegations Against Defendant Midland

107. Defendant Midland is not the owner of this alleged debt.

108. Defendant Midland has collected against Plaintiff when Plaintiff did not owe any money to Defendant Midland on this account.

109. Defendant Midland has misrepresented the debt to Plaintiff.

110. This includes the amount of the debt as none is owed.

111. This includes the legal status of the debt as none is owed.

112. This includes the false statement that Defendant Midland intended to offer any proof in the case when it had no such intention.

113. Defendant Midland has threatened to take action it knows is illegal for Defendant Midland to take.

114. This includes suing on a debt it knew or should have known the statute of limitations had passed, proceeding to trial when Defendant Midland knew at the time and continues to know that it has no right to proceed to trial on a debt it does not own and that Plaintiff does not owe, and falsely credit reporting a debt.

115. Defendant Midland knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed

by Plaintiff, the filing of a lawsuit when Defendant Midland did not own the debt, by false credit reporting, by misrepresenting numerous facts in the lawsuit, by threatening to take Plaintiff's property and wages, and by all other wrongful acts described in this Complaint.

116.   Plaintiff did not and does not owe this money to Defendant Midland.

117.   The debt being collected is a consumer debt as defined by the FDCPA.

118.   Plaintiff is a "consumer" as defined by the FDCPA.

119.   Defendant Midland is a "debt collector" as defined by the FDCPA.

120.   Defendant Midland refused to give Plaintiff all required notifications and disclosures under the FDCPA.

121.   Defendant Midland has been repeatedly sued in Alabama for filing suits with no basis to do so.

122.   Defendant Midland has been repeatedly sued in Alabama for filing suits with no intention of proving the allegations in the lawsuits.

123.   Defendant Midland has been repeatedly sued in Alabama for false credit reporting on debts not owed by Alabama consumers.

124.   Defendant Midland has full knowledge of what it is doing by filing bogus lawsuits and illegal collection activities.

125.   Defendant Midland knows that it is suing Alabama consumers who do not owe the debts being sued upon.

126. Defendant Midland knows that it is suing Alabama consumers on debts that Defendant Midland does not own.

127. Defendant Midland has calculated that the most profitable way to conduct these suits is to file them with no investigation on the merits of the suit, to provide no evidence to collection counsel, to provide no valid evidence for any court to consider, and to use deception and intimidation to force Alabama consumers to pay for debts not owed or to obtain default or consent judgments against the Alabama consumers.

128. Defendant Midland files numerous lawsuits in Alabama with no intention of proving those lawsuits.

129. Defendant Midland is counting on the fact that many Alabama consumers will not answer and so default judgments will be entered.

130. This type of "scattershot" litigation strategy is improper, deceptive, and abusive.

131. Defendant Midland knows that its "scattershot litigation" is improper but it has decided that this is the most effective way to obtain money from Alabama consumers who do not owe the money to Defendant Midland.

132. The conduct of the Defendant Midland has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and

credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

133. It is a practice of the Defendant Midland to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

134. Defendant Midland knows its conduct is wrong but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

135. All actions taken by employees, agents, servants, or representatives of any type for the Defendant Midland were taken in the line and scope of such individuals' employment, agency or representation.

136. This includes collection counsel for Defendant Midland who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Midland.

137. All actions taken by the Defendant Midland were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

138. Defendant Midland has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Midland is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

139. Defendant Midland is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

## SUMMARY

140. All of the above-described collection activities made to Plaintiff by Defendant Midland were made in violation of the FDCPA, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

141. The above-detailed conduct by the Defendant Midland of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

142. This series of abusive collection actions by Defendant Midland caused Plaintiff stress and anguish.

143. Defendant Midland's attempts to collect this debt from Plaintiff and refusal to stop violating the law is an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

144. Plaintiff has suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

## NEGLIGENT AND WANTON HIRING AND SUPERVISION

145. Defendant Midland negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692 et seq.

146. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

147. The acts and omissions of Defendant Midland constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

148.   As a result of Defendant Midland's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Midland.

## COUNT II.

## INVASION OF PRIVACY

149.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

150.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Midland violated Alabama state law as described in this Complaint.

151.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

152.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions"

including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

153. Defendant Midland intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

154. Defendant Midland intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

155. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

156. The conduct of Defendant Midland, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Midland which occurred in a way that would be highly offensive to a reasonable person in that position.

157. This conduct includes the filing of a public lawsuit against Plaintiff.

158. A public lawsuit that has no merit and Defendant Midland knew at the time it filed the lawsuit that it had no merit.

159. Defendant Midland has continued to publicly state through credit reporting that Plaintiff owes the debt to Defendant Midland when Defendant Midland knows this is untrue.

160. All of the other wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Midland in its campaign of improper debt collection which has led to the Plaintiff's privacy being invaded.

161. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Midland.

162. All acts of Defendant Midland were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Midland is subject to punitive damages.

## COUNT III.

### NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

163. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

164.    Defendant Midland's collectors are allowed and encouraged to break the law in order to collect debts.

165.    This includes all of the violations of the law described in this Complaint.

166.    Defendant Midland is aware of the wrongful conduct of its collectors.

167.    Defendant Midland negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Midland is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV.

## WANTON, MALICIOUS, AND INTENTIONAL CONDUCT

168.    All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

169.    Defendant Midland had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

170.    Defendant Midland had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

171.    Defendant Midland acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

23

172. Defendant Midland violated all of the duties Defendant Midland had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

173. It was foreseeable, and Defendant Midland did in fact foresee it, the actions of Defendant Midland would lead and did lead to the exact type of harm suffered by Plaintiff.

174. Defendant Midland acted with malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

175. Defendant Midland invaded the privacy of Plaintiff as set forth in Alabama law.

176. Such malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this Complaint.

177. As a result of this conduct, action, and inaction of Defendant Midland, Plaintiff has suffered damages as set forth in this Complaint.

## COUNT V

## MALICIOUS PROSECUTION AND ABUSE OF PROCESS AGAINST DEFENDANT MIDLAND

178. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

179. Defendant Midland instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so.

180. Defendant Midland filed the lawsuit with no intention of ever proving its case.

181. Defendant Midland continued to prosecute the case with no intention of ever proving its case.

182. Defendant Midland filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.

183. Defendant Midland instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Midland money on a non-existent debt.

184. The malicious plan of Defendant Midland included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and/or seizures of property and the Defendant Midland tried to accomplish this by the Defendant Midland's malicious and abusive actions.

185. Throughout the entire illegal lawsuit against Plaintiff, Defendant Midland knew at all times that there was no basis for the lawsuit and the intent and

design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Midland knew it was not entitled to receive.

186. The suit was a time barred suit.

187. The litigation against Plaintiff filed by Defendant Midland eventually resulted in adjudication in favor of Plaintiff.

188. The illegal and improper actions of the Defendant Midland constitute malicious prosecution and abuse of process.

189. This is the pattern and practice of Defendant Midland – to file suits with no basis and no intention of ever proving the case in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Midland.

190. The Plaintiff suffered past and future emotional distress and monetary loss as a direct and proximate result of Defendant Midland's abuse of process and malicious prosecution.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims

more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further

violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

_____

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

_____

**Attorney for Plaintiff**

**Serve defendants via certified mail at the following addresses:**

Midland Funding, LLC
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104

Midland Credit Management, Inc.
c/o CSC Lawyers Incorporating Srv Inc
150 S. Perry Street
Montgomery, Alabama 36104